**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **M.J. McPHERSON SERVICES, L.L.P.,** | ) ) ) | **CASE NO. 5:06 CV 465** |
| Plaintiff, | ) ) | **JUDGE PETER C. ECONOMUS** |
| v. | ) ) | |
| **SPORTS IMAGES, INC.,** | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

This matter is before the Court upon Defendant Sports Images, Inc.'s Motion to Dismiss (Dkt. #10).

**I. BACKGROUND**

Plaintiff, M.J. McPherson Services LLP ("McPherson") and Defendant, Sports Images Inc. ("Sports Images") are both distributors and wholesalers of sports trading cards. (Dkt. #1, Ex. A ("Complaint") at ¶¶ 1–2).

In November 2001, Plaintiff began purchasing trading cards from Defendant, who delivered the cards to Plaintiff's warehouse in Cuyahoga Falls, Ohio. (Id. at ¶ 2). In

August 2002, Plaintiff and Defendant entered into an oral agreement whereby the card manufacturers who supplied Plaintiff would ship Plaintiff's cards to a warehouse owned by Defendant in Columbus, Ohio. (Id. at ¶ 4). Pursuant to the agreement, Defendant packaged and shipped the cards to Plaintiff's customers. (Id.). Each shipment was to bear Plaintiff's packing slips and contain invoices bearing Plaintiff's logo. (Id.). Plaintiff paid Defendant a fee for this service. (Complaint at ¶ 4). As a result of this agreement, and in order to complete delivery, Defendant acquired the names and addresses of all Plaintiff's clients. (Id. at ¶ 4). In December 2002, Defendant contacted Plaintiff in an attempt to negotiate acquisition of Plaintiff's customer list and business. (Id. at ¶ 5). After several months, the discussions ended without agreement. (Id. at ¶ 6).

Plaintiff contends that shortly after the negotiations failed, Defendant "unilaterally and without consent of [Plaintiff] endeavored to sell sports trading cards directly to [Plaintiff's] customers under [Defendant's] logo, packing slips and invoices thereby eliminating McPherson as the vendor." (Id.). Since that time, Plaintiff's principal customers Hartley Convenient Stores ("Hartley") and Dairy Mart/Mac's Convenient Stores ("Dairy Mart") have stopped purchasing trading cards from Plaintiff. (Id. at ¶¶ 7–8). In June 2003, Dairy Mart rejected a shipment of trading cards delivered by Defendant, and informed Plaintiff that Dairy Mart would no longer purchase cards from either Plaintiff or Defendant. (Complaint at ¶ 7). Plaintiff also alleges that since June 2003 Hartley has been a customer of the Defendant. (Id. at ¶ 8).

Plaintiff filed a Complaint on January 30, 2006 in the Court of Common Pleas, Summit County, Ohio. (Dkt. #1, Ex. A). The Complaint asserts two causes of action.

Count 1 asserts a claim for tortious interference with business arising from Defendant's misappropriation of Plaintiff's customer base. (Id.). Count 2 asserts a claim for misappropriation of trade secrets pursuant to Ohio Revised Code §1333.61. (Id.). On March 1, 2006, Defendant, pursuant to 28 U.S.C. §1441, removed the action to this Court invoking diversity jurisdiction. (Dkt. #1). Thereafter, Defendant submitted the instant Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted.

## II. STANDARD OF REVIEW

A 12(b)(6) motion tests whether a plaintiff has plead a cognizable claim. See Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). Essentially, it allows the court to dismiss meritless cases and claims which would otherwise waste judicial resources and result in unnecessary discovery. See e.g., Nietzke v. Williams, 490 U.S. 319, 326–27 (1989). A court, however, is to presume that well plead allegations are true, resolve all doubts and inferences in favor of the pleader, and view the pleading in the light most favorable to the non-moving party. See Cent. States, Southeast & Southwest Areas Pension Fund v. Mahoning Nat'l Bank, 112 F.3d 252 (6th Cir. 1997). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957); see Neitzke, 490 U.S. at 326–27; Lewis v. ACB Bus. Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1997); Ang v. Proctor & Gamble Co., 932 F.2d 540, 544 (6th Cir. 1991). Therefore, the standard applied in evaluating a motion

to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion.  See Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).

Before deciding to grant a motion to dismiss, the court must first examine the complaint.  The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a).  The complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley, 355 U.S. at 47; see Westlake, 537 F.2d at 858.  The plaintiff must allege the essential material facts of the case.  See Scheid, 859 F.2d at 436–37.  Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor.  See Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1039–40 (6th Cir. 1991).  In considering a 12(b)(6) motion, however, the court must not accept plaintiff's legal conclusions or unwarranted factual inferences as true.  See Lewis, 135 F.3d at 405–06; see also Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) (quoting Scheid, 859 F.2d at 436) ("'Although the standard for rule 12(b)(6) dismissals is quite liberal' the complaint must contain 'either direct or inferential allegations respecting all the material elements' and the allegations must constitute 'more than bare assertions of legal conclusions.'").

### III. LAW AND ANALYSIS

#### A. Trade Secrets Violation

Count two of the Complaint asserts that Defendant misappropriated a trade secret

and identifies the trade secret as Plaintiff's customer list.  In an action for misappropriation of a trade secret, a plaintiff must establish "that a trade secret exists."  Penetone Corp. v. Palchem Inc., 627 F.Supp. 997, 1005 (N.D. Ohio 1985); see Ex. Rel. Besser v. Ohio State University, 89 Ohio St. 3d 396, 401, 732 N.E.2d 373 (Ohio 2000); Alta Analytics Inc. v. Muuss, 75 F. Supp.2d 773, 785, (S.D. Ohio 1999).  The Ohio Uniform Trade Secrets Act ("UTSA") defines trade secret as follows:

> "Trade secret" means information, including the whole or any portion or phrase of any scientific or technical information, design process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following: (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.  (2) *It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy*.

OHIO REV. CODE § 1333.61(D) (emphasis added).  "A customer list is an intangible asset that is presumptively a trade secret when the owner of the list takes measures to prevent its disclosure in the ordinary course of business to persons other than those selected by the owner."  State ex rel. Lucas County Board of Commissioners v. Ohio Environmental Protection Agency, 88 Ohio St. 3d 166, 173, 724 N.E.2d 411, 418 (Ohio 2000).  In other words, customer lists are entitled to trade secret status when the owner of the alleged secret took reasonable measures to prevent or limit disclosure.  See id. (quoting State ex rel. The Plain Dealer v. Ohio Dept. of Ins., 80 Ohio St.3d 513, 529, 687 N.E.2d 661, 675 (Ohio 1997)) ("a document is entitled to trade secret status 'only if the information is not

5

generally known or readily ascertainable to the public.'"); Fred Siegel v. Arter & Hadden, 85 Ohio St. 3d 171, 182, 707 N.E.2d 853 (Ohio 1999) ("A possessor of a potential trade secret must take some active steps to maintain its secrecy in order to enjoy presumptive trade secret status, and a claimant asserting trade secret status has the burden to identify and demonstrate that the material is included in categories of protected information under the statute."); Penetone Corp. v. Palchem, Inc., 627 F.Supp. 997, 1005 (N.D. Ohio 1985) (quoting Water Management, Inc. v. Stayanchi, 15 Ohio St.3d 83, 85–86, 472 N.E.2d 715 (1984)) ("'there is no presumption that any particular idea…is a trade secret unless the possessor takes active steps to maintain the secrecy.'"); see also State ex rel. The Plain Dealer, 687 N.E.2d at 675.

  Plaintiff's Complaint fails to state a recognizable claim under the UTSA, because it fails to allege that Plaintiff took any steps to protect the secrecy of its customer list. Indeed, the Complaint acknowledges that through its agreement with Defendant, Plaintiff provided the customer list to Defendant. (Complaint at ¶ 4). The Complaint's allegation that the customer list is a trade secret is merely a legal conclusion, unsupported by facts in the Complaint. See Tahfs, 316 F.3d at 590. In order to "support a claim for misappropriation of trade secrets, a [p]laintiff is required to present evidence of facts which show the extent to which the information is known outside of the business and the precautions which Plaintiff has taken to guard the secrecy of the information." Northeast Ohio College of Massotherapy v. Burek, 144 Ohio App.3d 196, 208, 759 N.E.2d 869 (Ohio Ct. App. 7 Dist. 2001). Plaintiff fails to allege it took precautions to prevent Defendant

from using the customer list for business outside of the agreement; that the agreement contained a non-disclosure or confidentiality clause; or that it communicated to Defendant that it believed the customer list to be a trade secret. Consequently, Plaintiff's Complaint fails to state a claim for misappropriation of trade secrets under the Ohio USTA, see OHIO REV. CODE § 1333.61(D), and Plaintiff's trade secrets claim is dismissed.

### B. Tortious Interference

Count one of the Complaint asserts Defendant tortiously interfered with Plaintiff's business relations by misappropriating Plaintiff's customer base. A claim for tortious interference exists under Ohio law when "a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." A&B-Abell Elevator Co., Inc v. Columbus/Central Ohio Bldg. & Const. Trades Council, 73 Ohio St.3d 1, 14, 651 N.E.2d 1283, 1294 (Ohio 1995). To establish tortious interference with a business relationship, a plaintiff must therefore show: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; (4) lack of justification and (5) damages resulting therefrom. See Sancap Abrasives Corp. v. Swiss Indus. Abrasives, 19 Fed. Appx. 181, 193 (6th Cir. 2001) (quoting Chandler and Assocs., Inc. v. America's Healthcare Alliance, Inc., 125 Ohio App.3d 572, 709 N.E.2d 190, 197 (Ohio Ct. App. 8th Dist. 1997)); Kenty v. Transamerica Premium, 72 Ohio St. 3d 415, 419, 650 N.E.2d 863 (Ohio 1995). The business relationship cause of action differs from Ohio's tortious interference with contractual rights "only in that the former tort does

7

not require proof of a contractual relationship." Franklin Tractor Sales v. New Holland N. America, Inc., 106 Fed. Appx. 342, 344, n.1 (6th Cir. 2004); Super Sulky, Inc. v. U.S. Trotting Ass'n, 174 F.3d 733, 741 (6th Cir. 1999).

The Complaint alleges the existence of a business relationship between Plaintiff and two customers: Dairy Mart and Hartley, but fails to set fort facts alleging unjustified interference by Defendant. A defendant's action, or interference, is unjustified only if it was improper, and a plaintiff bears the burden of showing that a defendant's interference was improper. See Kenty, 72 Ohio St. 3d at 419; Doyle v. Fairfield Machine Co., 120 Ohio App. 3d 192, 217, 697 N.E.2d 667 (Ohio Ct. App. 11th Dist. 1997) ("the law in this state imposes the burden of proving lack of privilege or justification upon the plaintiff."). Facts demonstrating unjust or improper interference include the nature of the actor's conduct; the motive behind the conduct; the interests of the other with which the actor's conduct interferes; the interests sought to be advanced by the actor; the proximity or remoteness of the actor's conduct to the interference; the social interests in protecting the freedom of contract and the interference with such; and the relations between the parties. See Sancap Abrasives, 19 Fed. Appx. at 193; Fred Siegel, 707 N.E.2d at 860.

Plaintiff's Complaint fails to set forth facts demonstrating Defendant acted improperly. The Complaint asserts that Defendant engaged in "willful misconduct," and "unilaterally and without consent of the Plaintiff misappropriated the customer base of the Plaintiff." (Complaint at ¶10). Yet, the Complaint fails to state facts to support this legal conclusion. As discussed *supra*, the Complaint fails to assert the existence of a trade secret

8

and consequently fails to state that Defendant improperly made use of Plaintiff's customer list. Since the Court has determined that the Plaintiff has not asserted a cognizable claim under the Ohio USTA, Plaintiff cannot use an alleged Ohio USTA violation to support the tortious interference claim. Aside from the misappropriation of trade secrets allegation, the Complaint fails to elucidate how Defendant's actions were improper. For example, the Complaint fails to assert the nature of Defendant's relationship with Plaintiff's former customers Dairy Mart and Hartley. The Complaint merely states Defendant "took over" the Hartley account and fails to state why such action was unjustified, and in regards to Dairy Mart, the Complaint acknowledges that Dairy Mart does not even do business with Defendant. (Complaint ¶¶ 7–8).

The Complaint fails to allege improper conduct by the Defendant and satisfy the justification element of a tortious interference claim. Consequently, Plaintiff's Complaint fails to state a claim for tortious interference with business relations, and said claim is dismissed.

**IV CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. #10) is **GRANTED**. Accordingly, the above-noted matter is **DISMISSED**.

**IT IS SO ORDERED**

**s/ *Peter C. Economus* — 08/28/06**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**
